Timothy S. DeJong, OSB No. 940662
tdejong@stollberne.com
Keith A. Ketterling, OSB No. 913368
kketterling@stollberne.com
Cody Berne, OSB No. 142797
cberne@stollberne.com
Chloe Jasper, OSB No. 253957
cjasper@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 Southwest Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

*Liaison Counsel for Proposed Lead Plaintiff*
*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VENKATA SURYA TEJA GOLLAPALLI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>KINDERCARE LEARNING COMPANIES, INC., PAUL THOMPSON, ANTHONY AMANDI, JOHN T. WYATT, JEAN DESRAVINES, CHRISTINE DEPUTY, MICHAEL NUZZO, BENJAMIN RUSSELL, JOEL SCHWARTZ, ALYSSA WAXENBERG, PRESTON GRASTY, PARTNERS GROUP HOLDING AG, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., and UBS SECURITIES LLC,<br><br>    Defendants. | Case No. 3:25-cv-01424-AR<br><br>CLASS ACTION ALLEGATION<br><br>MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL<br><br>Judge:  Hon. Jeffrey Armistead<br><br>Request for Oral Argument |

Proposed Lead Plaintiff Dearborn[1] respectfully submit this Memorandum of Law in further support of its Motion for appointment as Lead Plaintiff and approval of selection of Labaton as Lead Counsel; and in opposition to all competing movants.[2]

## INTRODUCTION

Dearborn is entitled to appointment as Lead Plaintiff under the PSLRA because it is *the only* movant asserting the largest financial interest in this litigation that *also* satisfies the PSLRA's adequacy and typicality requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (requiring the appointment of the movant that "has the largest financial interest" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure"). With losses of approximately $37,912 in connection with its Class Period transactions in KinderCare common stock in or traceable to the Company's October 2024 IPO and experience successfully representing investors in securities class actions, there can be no doubt that Dearborn has a substantial financial interest in this litigation and is adequate and typical in all respects.

While movant David Chung may claim a larger loss than Dearborn, a movant's alleged loss is only the starting point of the PSLRA's analysis. Unlike Dearborn, Mr. Chung's Lead Plaintiff application is plagued by incurable unique defenses that undermine his typicality and adequacy and mandate disqualification. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for any reason) the court determines that the movant with the largest losses cannot

---

[1] Unless otherwise noted, all defined terms and abbreviations remain unchanged from those in Dearborn's opening motion and supporting papers. *See* ECF Nos. 22-23. All citations and internal quotations are omitted, and all emphasis is added, unless noted.

[2] In addition to Dearborn, two other investors filed for Lead Plaintiff appointment on October 14, 2025. ECF Nos. 24 and 26. One of those movants, Rufat Ilyasov, has withdrawn his motion. ECF No. 35. Accordingly, only Dearborn and David Chung continue to vie for appointment.

make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff.").

*First,* Mr. Chung's trading subjects him to a "unique defense that could become the focus of the litigation." *Reinschmidt v. Zillow, Inc.*, 2013 WL 1092129, at *4 (W.D. Wash. Mar. 14, 2013). Specifically, Mr. Chung cannot prove he has standing in the Action because his financial interest rests entirely on his purchases of KinderCare stock on December 2, 2024 and December 6, 2024, months after the Company's IPO in October 2024. ECF No. 25-1. Based on KinderCare's public filings, the Company likely issued shares that were not traceable to the IPO *before* Mr. Chung made his purchases. Therefore, Mr. Chung cannot prove that he purchased shares of KinderCare stock traceable to the IPO. *See* ECF No. 1 ¶ 57 (defining the Class as "all purchasers of KinderCare common stock in or traceable to the IPO") (the "Complaint"); *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023) (holding that a plaintiff in cases brought under Section 11 of the Securities Act of 1933 (the "Securities Act") must "plead and prove that he purchased shares traceable to the allegedly defective registration statement").

*Second,* in addition to this fundamental trading issue, Mr. Chung is a completely unknown individual who has failed to provide any evidence whatsoever of his ability to adequately represent the Class. In fact, based on his filed motion, neither other movants nor the Court can identify *who Mr. Chung is*, meaning the Court does not even have enough information to evaluate his adequacy. Moreover, Mr. Chung's choice of counsel also renders him inadequate because, as explained below, this counsel has violated Oregon Rules of Professional Conduct, Rule 7.1 ("Professional Rule 7.1") by repeatedly falsely advertising to have filed the complaint in this Action. As such, he has failed to meet the PSLRA's adequacy requirement and cannot be appointed.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:25-cv-01424-AR

Mr. Chung's unique defenses would expose the Class to costly, potentially fatal risks.  In contrast, Dearborn's prototypical trading pattern and status as a sophisticated institutional investor perfectly positions it to serve as Lead Plaintiff.  Under the sequential PSLRA lead plaintiff process, Dearborn is the only movant to satisfy the statutory test and should be appointed as Lead Plaintiff.

## ARGUMENT

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *Cendant*, 264 F.3d at 266.  To effectuate this goal, district courts are given broad discretion to reject lead plaintiff applicants that are atypical, inadequate, or subject to unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The dispositive issue is whether there is "non-speculative risk that the movant [with the greatest financial loss] will not be adequate." *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016).  As many courts have noted, "[t]here is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial." *Liles v. SoundHound AI, Inc.*, 2025 WL 1937541, at *1 (N.D. Cal. July 14, 2025).

Based on prevailing authority in the Ninth Circuit addressing lead plaintiff appointment, courts have held that lead plaintiff movants must be rejected where there is a "genuine and serious doubt" as to their typicality or adequacy.  *Averza v. Super Micro Comput., Inc.*, 788 F. Supp. 3d 1060, 1073 (N.D. Cal. 2025) (citing *In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002) and *In re Mersho*, 6 F.4th 891, 901 (9th Cir. 2021)).  Under this standard, "[e]ven if an argument would not defeat typicality and adequacy at the class certification phase . . . if that argument is a substantial one, it may still defeat the presumption at lead plaintiff selection." *Id.* at 1074.  Courts reject lead plaintiff movants to "protect[] the putative class, potentially shielding it from the cost and delay

4

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:25-cv-01424-AR

that comes from litigating typicality and adequacy under Rule 23." *Id.*  Thus, the standard to disqualify a lead plaintiff movant is not ***proving*** inadequacy or that the movant is subject to a unique defense, but rather whether there is "a substantial likelihood that a unique defense could be raised." *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012).

Here, Dearborn is the ***only*** movant that satisfies the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Appointing Mr. Chung would severely undermine the prosecution of the Class' claims because such a blatantly atypical and inadequate lead plaintiff may be disqualified or rejected at later stages of litigation—a result that could force the Court to either reopen the Lead Plaintiff selection process or dismiss the Action.  *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses").  In contrast, Dearborn's appointment would not expose the Class to any such risks.

### A.    Mr. Chung Is Subject to Unique Defenses Concerning the Traceability of His Purchases and His Motion Should be Denied

#### 1.    Mr. Chung Cannot Prove that His Purchases Were Traceable to the IPO, Subjecting Him to a Disqualifying Unique Defense

Mr. Chung is subject to a disqualifying unique defense because he cannot prove that his purchases of KinderCare stock were traceable to the IPO.  The Action's claims arise under Section 11 of the Securities Act.  Complaint ¶ 2.[3]  In a case brought pursuant to Section 11 of the Securities Act, plaintiff must "plead and prove that [they] purchased shares traceable to the allegedly

---

[3] The Action also brings claims under Section 15 of the Securities Act.  Complaint ¶ 75.  Section 15 claims are "control" claims, ECF ¶¶ 76-78, which require proving an underlying claim, such as a Section 11 claim.  *In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *20-21 (D. Or. Nov. 24, 2021).  Therefore, if Mr. Chung fails to demonstrate a Section 11 claim, he also fails to demonstrate he has a Section 15 claim and will be completely excluded from the Class.

defective registration statement." *Slack Techs.*, 598 U.S. at 770. The relevant registration statement in the Action was issued by KinderCare pursuant to the IPO. Complaint ¶ 25. The Class in the Action is defined as "all purchasers of KinderCare common stock in or traceable to the IPO." *Id.* ¶ 57. Accordingly, to show that he is a Class member with standing, Mr. Chung must prove that he purchased KinderCare stock traceable to the IPO.

Proving Section 11 standing is simple when all of a company's common stock shares were issued pursuant to the allegedly misleading registration statement. *In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*, 2025 WL 714171, at *7 (C.D. Cal. Mar. 3, 2025) ("When all of a company's shares have been issued in a single offering under the same registration statement, this tracing requirement will typically pose no obstacle."). That is not the case here. Simultaneous with the registration statement KinderCare filed pursuant to the IPO, KinderCare filed an additional registration statement on Form S-8 on October 9, 2024.[4] Pursuant to this S-8, KinderCare registered shares pursuant to two employees benefit plans at the same time it registered shares pursuant to the IPO. DeJong Decl. Ex. A.

Because KinderCare filed two contemporaneous registration statements, each Lead Plaintiff movant must prove they purchased shares ***directly traceable*** to the IPO registration statement ***and not*** the additional documents issued in connection with the Form S-8. The prototypical way plaintiffs prove their standing in such cases is to buy stock directly pursuant to the IPO, as Dearborn did. *Golden Heaven*, 2025 WL 714171, at *7 (holding that plaintiffs can establish statutory standing by alleging that they "purchased their shares directly in the relevant offering."). In this case, KinderCare and its Underwriters sold the IPO shares to investors in

---

[4] A copy of KinderCare's S-8 from October 9, 2024 is attached as Exhibit A to the accompanying Declaration of Timothy S. DeJong ("DeJong Decl.").

October 2024, Complaint ¶ 25, at $24 per share. *Id.* ¶ 26. Therefore, to prove they bought shares directly from Defendants on KinderCare's IPO, Lead Plaintiff movants need to show they bought KinderCare shares in October 2024 at a price of $24 per share, as Dearborn did. ECF No. 23-1. The required proof is more complicated for movants which, like Mr. Chung, did not purchase shares directly on the IPO.

Mr. Chung cannot prove his purchases of KinderCare stock were made traceable to the IPO registration statement because, as discussed above, at the same time Mr. Chung was buying his shares, KinderCare was issuing additional shares ***traceable to a different registration statement***, the Form S-8. The IPO shares were issued in October 2024. Complaint ¶¶ 25-26. After the IPO, KinderCare disclosed, in its quarterly report filed for the period ended September 28, 2024, that it had issued 117,966,089 shares by November 18, 2024. DeJong Decl. Ex. B. This accounted for all the KinderCare shares issued in the IPO. Then, in its annual report for the fiscal year ended December 28, 2024, KinderCare reported that it had issued a total of 117,984,749 shares by December 28, 2024. DeJong Decl. Ex. C. Based on these filings, KinderCare issued 18,660 non-IPO shares between November 19 and December 28, 2024, the ***same time*** that Mr. Chung made his purchases. Mr. Chung cannot confirm whether he bought shares traceable to the IPO, or the shares issued by KinderCare not traceable to the IPO. Because Mr. Chung has no way to prove which shares he purchased, he cannot prove his standing in the Action.

Courts regularly reject lead plaintiff movants which, like Mr. Chung, cannot prove they bought securities traceable to the relevant registration statement. In *Doherty v. Pivotal Software, Inc.*, the court rejected a movant group which could not adequately allege its shares were traceable to the relevant offering. 2019 WL 5864581, at *11 (N.D. Cal. Nov. 8, 2019). In that case, the defendant company had issued shares under multiple registration statements, creating a "mixed-

market scenario" where the rejected movant may or may not have purchased shares pursuant to the relevant offering. *Id.* at *9. The court rejected the movant group, finding that group's "shares could have come from the offering, or alternatively, could not have." *Id.* at *10. Mr. Chung has similarly failed to show that he purchased IPO shares as he made his purchases in a mixed market. *See Sundaram v. Freshworks Inc.*, 2023 WL 1819158, at *5 (N.D. Cal. Feb. 8, 2023) (rejecting a lead plaintiff movant which clearly purchased shares "in a mixed market" and therefore had "not plausibly alleged that his shares are traceable to the IPO").

Courts also reject proposed class representatives which fail to demonstrate standing at the class certification stage. The court in *In re Quarterdeck Office Systems, Inc. Securities Litigation* denied class certification where the plaintiffs could not trace their stock purchases to the relevant registration statement. 1993 WL 623310, at *2 (C.D. Cal. Sept. 30, 1993). Specifically, plaintiffs admitted that "they did not purchase their stock at the IPO." *Id.* The court rejected plaintiffs' arguments that they likely purchased stock traceable to the IPO based on statistical analysis, finding that "[t]his speculative basis for standing, without more, is insufficient for the purposes of [Section] 11." *Id.* at *3. Mr. Chung's trading would expose the Class to the exact same attack, and therefore he is subject to a unique defense.

### 2. Mr. Chung's Atypical Trading Threatens the Interests of the Class

The unique defense posed by Mr. Chung's atypical trading is not an idle concern—it would pose material risks to the interests of the Class if Mr. Chung were appointed Lead Plaintiff. The existence of such risks requires that Mr. Chung's request for appointment be denied. *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *3 (C.D. Cal. Apr. 1, 2019) (disqualifying a lead plaintiff movant due to a unique defense and holding that "the Court need not resolve the dispute at this stage; rather, it is sufficient to conclude that the issue is quite likely to be raised by Defendants to

the detriment of the putative class"); *Lemm v. N.Y. Cmty. Bancorp, Inc.*, 733 F. Supp. 3d 107, 118 (E.D.N.Y. 2024) ("It is sufficient . . . [to show proof of] a *risk* of unique defenses to rebut the presumption of [a movant's] adequacy") (emphasis in original).

**First**, if Mr. Chung is appointed Lead Plaintiff, he will waste the Class' resources and time trying to prove he has standing in the Action. As discussed above, Defendants could effectively argue that Mr. Chung did not buy any shares traceable to the IPO and therefore is not part of the case at all. This argument itself would subject the Class to unnecessary costs as "even ultimately unsuccessful unique defenses may divert attention from the substance of the basic claim, and class members are entitled to be represented by someone unhindered by such distractions." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020); *Larmay v. AMMO Inc.*, 2025 WL 2399292, at *5 (D. Ariz. Aug. 19, 2025) (the purpose of the unique defense analysis is not to "adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole").

It is clear that Defendants will attack Mr. Chung on standing because Defendants regularly raise these issues. *See, e.g., Leslie Lilien v. Olaplex Holdings, Inc.*, No. 22-cv-08395 (C.D. Cal.), ECF No. 202 at 15-19 (defendants arguing that a class cannot include investors that purchased the relevant stock after non-IPO shares entered the market). Because of these vulnerabilities, appointing Mr. Chung would inevitably result in him wasting class resources to defend his atypical trading. *See Snap*, 2019 WL 2223800, at *2-3 (rejecting lead plaintiff movant where "potential problems regarding the [movant's] typicality and adequacy have been raised by the other movants," and therefore it was "highly likely . . . that the [movant] would have to devote class resources to defending itself").

*Second*, Mr. Chung's unique defense creates a severe risk that he would be found inadequate to represent the Class at the class certification stage. Denial of class certification is a potentially fatal risk because, if certification fails, and the statute of limitations in the Action has run, the Class would have **no recourse** to pursue its claims, except to file individual lawsuits. *China Agritech v. Resh*, 584 U.S. 732, 735–36 (2018) ("Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no."). As in most PSLRA lawsuits, pursuing claims individually is simply not viable for most Class members in this Action. *See, e.g. Mossberg v. IndyMac Fin., Inc.*, 2011 WL 13593148, at *9 (C.D. Cal. Nov. 14, 2011) ("[R]ecovery on an individual basis would be dwarfed by the cost of litigating on an individual basis."). Section 11 lawsuits have a one-year statute of limitation and a three-year statute of repose, each of which has already begun to run in the Action. 15 U.S.C. § 77m. If the risk posed by Mr. Chung's unique defense materializes, most Class members will be unable to pursue their claims.

Under these circumstances, appointing Mr. Chung as Lead Plaintiff would place the interests of the entire Class at unreasonable risk. This risk is entirely unnecessary here, given that Dearborn does not suffer from the same debilitating trading issues.

**B.     Mr. Chung Is an Unknown Individual Who Failed to Make the Required Adequacy Showing and Therefore Cannot Trigger the Presumption**

**1.     Mr. Chung Did Not Provide Sufficient Information For the Court to Analyze His Adequacy**

Even putting aside critical issues in Mr. Chung's trading, he cannot be appointed Lead Plaintiff because he has failed to provide enough identifying information to even allow the Court to **evaluate** his adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (lead plaintiff movants must show

10

that they "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure"). Lead plaintiff movants may only trigger the PSLRA's presumption that they are the most adequate plaintiff if they make a satisfactory adequacy showing. *Id.* Mr. Chung's skeletal submission does not even give other movants or the Court sufficient details to determine ***who he is***, let alone enough evidence to determine whether he would make an adequate lead plaintiff. *See Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 449 (D. Mass. 2018) (rejecting a movant who "did not provide sufficient information for the court to decide whether [movant] satisfied all of the PSLRA's requirements for serving as lead plaintiff").

The following constitutes all the facts that Mr. Chung's attorneys provided in his Lead Plaintiff motion to establish his identity and support his adequacy:

1. he has "been investing in the stock market for over 40 years;"

2. he "resides in Busan, Republic of Korea;"

3. he "possesses a master's degree;"

4. he "is currently retired, but prior to that he was an engineer;" and

5. he "he has hired attorneys for family law matters." ECF No. 24 at 10.

Not only does this short list of facts fail to show that Mr. Chung is an adequate Lead Plaintiff, it is not even sufficient to identify him. In fact, despite a substantial investigative effort, employing the skills and experience of Labaton's in-house investigative team, counsel for Dearborn could not pinpoint which David Chung moved for appointment in this Action. *See* DeJong Decl. Ex. D (declaration describing the thorough effort undertaken by Dearborn's counsel to definitively identify David Chung). This extensive search included, among other efforts: international and U.S. search engine results, Korean and U.S. court records, and various social media platforms. *Id.* ¶ 3. The results of these efforts confirm that Mr. Chung has not provided

11

enough information to identify him. *Id.* ¶ 4 (describing demographic information indicating that over 17,000 people in Busan, Republic of Korea could match the description given in Mr. Chung's motion). Mr. Chung simply cannot be appointed where the Court cannot determine his identity.

Lead plaintiff applications which, like Mr. Chung's, do not provide enough information to evaluate adequacy have been summarily rejected. For example, in *Wasa Medical Holdings v. Sorrento Therapeutics, Inc.*, the court rejected an individual lead plaintiff movant, finding "there is a lack of detail for the Court to determine the sophistication and suitability of [movant] as Lead Plaintiff." 2021 WL 533518, at *4 (S.D. Cal. Feb. 12, 2021). That movant had merely provided their age, location, education, profession, and some details about her family's business. *Id.* Mr. Chung provides no greater detail and must be rejected.

Similarly, in *In re Boeing Co. Aircraft Securities Litigation*, the court rejected lead plaintiff movants which provided "no information about [their] level of financial sophistication or about the general source of their wealth; no general information about their backgrounds, education, employment, or investment experience; no information about their litigation experience generally or any basis to gauge their ability to control and manage complex class action securities litigation." 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019). The court noted that "to make a prima facie showing of adequacy . . . a movant must supply *some* information about its ability to perform the role of lead plaintiff diligently and effectively." *Id.* (emphasis in original). Mr. Chung must be similarly rejected for failing to provide any information about his "financial sophistication, experience, and ability to effectively manage and direct the activities of class counsel," sufficient to even analyze his adequacy. *Id.*

**2.    Mr. Chung's Meager Adequacy Showing Cannot Satisfy the PSLRA's Requirement**

Even if the Court were to consider Mr. Chung's scant submission, it is clear he has not sufficiently demonstrated his adequacy. Courts have noted that the purpose of the PSLRA's lead plaintiff analysis is to "to direct courts to appoint, as lead plaintiff, the most sophisticated investor available and willing so to serve in a putative securities class action." *Berger v. Compaq Comput. Corp.*, 279 F.3d 313, 313 (5th Cir. 2002). Pursuant to that directive, a "lead plaintiff should be an investor capable of understanding and controlling the litigation." *Id.* Based on this bedrock PSLRA requirement, and pursuant to developing jurisprudence, courts have carefully analyzed lead plaintiff motions submitted by individuals to ensure that classes of investors are represented by lead plaintiffs which have the sophistication, resources, and experience needed to oversee complex litigation. *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (rejecting a lead plaintiff movant who "failed to include any basic details about himself").

Thus, evidence of a lead plaintiff movant's lack of adequacy includes "the available resources and experience of the proposed lead plaintiff . . . ." *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 2614703, at *2 (S.D.N.Y. May 22, 2020). Examining such evidence "promotes consistency with the PSLRA's aim of ensuring a lead plaintiff can act like a real client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation [i]s delivered at a reasonable price." *Id.* A lead plaintiff movant fails to meet the adequacy requirement if he lacks "meaningful litigation experience." *Id.* at *3. Further, a lead plaintiff movant having "career experience that appears to have no bearing on the management of securities litigation," will "undermine [the movant's] claim that he can meaningfully oversee and control the prosecution of this consolidated class action." *Id.*

13

Based on this standard, courts regularly reject individual lead plaintiff movants who fail to show they can manage complex litigation. In *Perez v. HEXO Corp.*, Judge Buchwald declined to appoint the movant with the largest financial interest as lead plaintiff because the court was skeptical that "an individual investor about whom little is known – possesse[d] the requisite sophistication to serve as lead plaintiff . . . ." 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020). The lead plaintiff movant in *Perez*, like Mr. Chung, had provided information as to his professional career and noted that he had decades of investing experience. *Id*. The court found this proffer insufficient to demonstrate his adequacy. *Id*. Similarly, *Shapiro v. TG Therapeutics, Inc.*, the court rejected an individual with "over forty years of investment experience," and "experience in managing attorneys in real estate and other matters," but had "no prior experience managing securities class actions." 2022 WL 16555585, at *5 (S.D.N.Y. Oct. 31, 2022); *see also Schriver v. Impac Mortg. Holdings, Inc.*, 2006 WL 6886020, at *9 (C.D. Cal. May 2, 2006) (declining to appoint a group of investors in part because they "may lack experience managing attorneys or litigating securities cases"). Based on his lawyer's submission, Mr. Chung is a retired individual living in the Republic of Korea with no relevant experience overseeing lawyers. ECF No. 24 at 10. Mr. Chung's motion papers give no indication he has any experience overseeing counsel in complex litigation or has the sophistication and resources needed to do so. Thus, Mr. Chung should be rejected as Lead Plaintiff because he is an unknown individual who has not shown he has the sophistication or the resources to oversee the Action.[5]

---

[5] No one understands the risks of appointing inexperienced and unproven lead plaintiffs more than Mr. Chung's counsel, Levi & Korsinsky, LLP ("Levi"). In at least ten instances over the past three years alone, Levi was appointed lead counsel on behalf of an individual lead plaintiff, and, shortly thereafter, completely abandoned the class' claims by filing a voluntary dismissal. *See Krivenok v. Joint Stock Company Kaspi.kz*, No. 24-cv-10926 (C.D. Cal.), ECF No. 39; *Wilson v. Xerox Holdings Corp.*, No. 24-cv-08809, (S.D.N.Y.), ECF No. 47; *Holzer v. Bumble Inc.*, No. 24-cv-

### 3.    Mr. Chung's Adequacy is Further Undermined by His Selection of Counsel

Mr. Chung's adequacy to lead the Action is further undermined by the fact that Levi, his chosen counsel, has falsely claimed to have filed this Action in a series of press releases, violating Professional Rule 7.1.  Professional Rule 7.1 forbids lawyers from "mak[ing] a false or misleading communication about the lawyer or the lawyer's services," and states that a "communication is false or misleading if it contains a material misrepresentation of fact."  Courts in the Ninth Circuit have consistently held that "ethical concerns" impact "the court's adequacy inquiry."  *In re Valve Antitrust Litig.*, 2025 WL 1285748, at *4 (W.D. Wash. May 2, 2025); *see also White v. Experian Info. Sols.,* 993 F. Supp. 2d 1154, 1170 (C.D. Cal. 2014), *as amended* (May 1, 2014) ("[I]t is clear that a lawyer's unethical conduct, both before and during the litigation in question, is relevant to determining whether counsel is adequate under Rule 23.")

By way of background, the PSLRA requires that the plaintiff which files the initial complaint in an action issue a "notice advising members of the purported plaintiff class" about the existence of the lawsuit.  15 U.S.C. § 78u-4(a)(3)(A).  Counsel for plaintiff in the Action filed such notice on August 12, 2025.  ECF No. 23-3.  Clearly, based on that notice, Levi did not file the Action or a related lawsuit.  Nonetheless, Levi issued multiple notices claiming to have "File[d] Lawsuit Over KinderCare Learning Companies, Inc. Stock Losses" and "Filed[] Class Action Against KinderCare Learning Companies, Inc."  *See* DeJong Decl. Ex. E (multiple press releases

---

01131 (W.D. Tex.), ECF No. 50; *Crain v. MacroGenics, Inc.*, No. 24-cv-02184 (D. Md.), ECF No. 31; *Li v. Roblox Corp,* No. 24-cv-03484 (N.D. Cal.), ECF No. 23; *Lucid Alternative Fund, LP v. Innoviz Techs. Ltd.*, No. 24-cv-01971 (S.D.N.Y.), ECF No. 37; *Neilsen v. Lantronix, Inc.*, No. 24-cv-00385 (C.D. Cal.), ECF No. 38; *Gurevitch v. KeyCorp*, No. 23-cv-01520 (N.D. Ohio), ECF No. 44; *Schoen v. Eiger BioPharmaceuticals, Inc.*, No. 22-cv-06985 (N.D. Cal.), ECF No. 33; *Pugley v. Fulgent Genetics, Inc.*, No. 22-cv-06764 (C.D. Cal.), ECF No. 41.

issued by Levi). This is simply false, and as such Mr. Chung's counsel has clearly violated Professional Rule 7.1 by falsely claiming to have filed the Action.

This is not the first time Levi has made such false claims in the hopes of seeking appointment as lead counsel. In fact, it has made such false claims in over a dozen recent lawsuits. *See* DeJong Decl., Ex. F (compiling press releases issued by Levi). In each of the lawsuits referred to in the press releases compiled in Exhibit F, Levi falsely claimed to have filed the relevant action.[6] In another Ninth Circuit case, Levi and its client have recently been challenged as inadequate for just this conduct. *Johnson v. Sable Offshore Corp.*, No. 25-cv-06869 (C.D. Cal.), ECF No. 51. Levi's conduct, and Mr. Chung's lack of oversight to prevent such conduct, is precisely what the PSLRA was designed to avoid: an inadequate plaintiff completely unable to oversee his counsel and ensure quality representation for the Class. *See TG Therapeutics, Inc.*, 2022 WL 16555585, at *5 (rejecting an individual lead plaintiff movant where the court had "considerable doubts about [movant's] serious involvement in managing his counsel").

---

[6] *See* (1) *Jboor v. Replimune Group, Inc.*, 25-cv-12085 (D. Mass.), ECF No. 1 at 18; (2) *Hernandez v. RCI Hospitality Holdings, Inc.*, 25-cv-04477 (S.D. Tex.), ECF No. 1 at 25; (3) *Norrman v. KBR, Inc.,* 25-cv-04464 (S.D. Tex.), ECF No. 1 at 15; (4) *Ho v. Savara Inc.*, 25-cv-05147 (E.D. Pa.), ECF No. 1 at 22; (5) *Johnston v. LifeMD, Inc.*, 25-cv-04761 (E.D.N.Y), ECF No. 1 at 18; (6) *Sandoval v. Charter Communications, Inc.*, 25-cv-06747 (S.D.N.Y.), ECF No. 1 at 30; (7) *O'Connor v. CTO Realty Growth, Inc.*, 25-cv-01516 (M.D. Fla.), ECF No. 1 at 49-50; (8) *Elkhodari v. Unicycive Therapeutics, Inc.*, 25-cv-06923 (N.D. Cal.), ECF No. 1 at 20-21; (9) *Maglione v. Fluor Corp.*, 25-cv-02496 (N.D. Tex.), ECF No. 1 at 24-25; (10) *Krishnamoorthy v. Semler Scientific, Inc.*, 25-cv-07303 (N.D. Cal.), ECF No. 1 at 15; (11) *Sarti v. Dow Inc.*, 25-cv-12744 (E.D. Mich.), ECF No. 1 at 35; (12) *City of St. Clair Shores Police and Fire Retirement System v. Lineage, Inc.*, 25-cv-12383 (E.D. Mich.), ECF No. 1 at 28-29; (13) *Gémesi v. RxSight, Inc.* 25-cv-02093 (C.D. Cal.), ECF No. 1 at 20, and *Makaveev v RxSight, Inc.*, 25-cv-01596 (C.D. Cal.), ECF No. 1 at 28 (related actions not filed by Levi); (14) *Yaghsizian v. Hims & Hers Health, Inc.*, 25-cv-05321 (N.D. Cal.), ECF No. 1 at 21, and *Sookdeo v. Hims & Hers Health, Inc.*, 25-cv-05315 (N.D. Cal.), ECF No. 1 at 21 (related actions not filed by Levi); (15) *Johnson v. Sable Offshore Corp.*, 25-cv-06869 (C.D. Cal), ECF No. 1 at 34.

16

The notion that a totally unknown individual such as Mr. Chung, who has made no adequacy showing and is patently unable to oversee his counsel, should be appointed Lead Plaintiff over Dearborn flies in the face of the PSLRA. As such, Dearborn should be appointed to ensure the Class receives proper representation.

## C.    As the Only Institutional Investor Seeking Appointment as Lead Plaintiff, Dearborn Is the Paradigmatic Lead Plaintiff and Should be Appointed

In contrast to Mr. Chung, whose motion is riddled with unique defenses and adequacy issues, Dearborn is the clear choice for Lead Plaintiff appointment: a single institution ready, willing, and able to oversee counsel and litigate this case in the best interests of the Class. Understanding the value of institutional investor leadership, many courts have recognized that the PSLRA reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See, e.g., In re Nike, Inc. Sec. Litig.,* 2024 WL 4579499, at *5 (D. Or. Oct. 25, 2024) (finding adequacy requirement met in part because of movants' "experience as institutional investors"); *Haideri v. Jumei Int'l Holding Ltd.*, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) ("[T]he adequacy of [movant] as a lead plaintiff is supported by the fact that it is an institutional investor.").

Capital markets experts agree that class members benefit when institutional investors such as Dearborn serve as lead plaintiff, resulting in substantially larger settlements. *See* Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2024 Review and Analysis* 2 (CORNERSTONE RSCH. 2025), https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf ("An institutional investor serving as lead or co-lead plaintiff has historically been associated with cases with larger settlements."); James D. Cox, Randall S. Thomas & Lynn Bai, *There Are Plaintiffs and . . . There Are Plaintiffs: An Empirical Analysis of Securities Class Action Settlements*, 61 VAND. L. REV.

17

355, 378 (2008) ("We find that the presence of an institutional lead plaintiff increases settlement size overall."). Further, Dearborn is familiar with the PSLRA's requirements given its experience leading other similar class actions. *See Allison v. Oak Street Health, Inc.*, No. 22-cv-00149 (N.D. Ill.) (Dearborn serving as an additionally named plaintiff in a case which settled for $60 million). The Court can easily avoid the issues raised by Mr. Chung's Lead Plaintiff application by appointing Dearborn.

If, despite the evidence of Mr. Chung's atypical and inadequacy, the Court is inclined to appoint him Lead Plaintiff, Dearborn respectfully requests that the Court appoint Dearborn as co-Lead Plaintiff and Dearborn's counsel co-Lead Counsel alongside Mr. Chung and his chosen counsel to protect the Class' interests. Courts have noted that lead plaintiff movants living overseas, such as Mr. Chung "may present challenges to the expeditious litigation of [the] case." *Davoodi v. Zeta Glob. Holdings Corp.*, 2025 WL 622686, at *3 (S.D.N.Y. Feb. 26, 2025). Mr. Chung presents such challenges, as he is an individual living in Busan with no plan to oversee or control his chosen counsel and no experience overseeing complex litigation such as the Action. In contrast, Dearborn is based in Michigan and regularly communicates with and instructs its counsel, Labaton, regarding ongoing matters. To best protect the Class, Dearborn respectfully requests that the Court "appoint an institutional investor based in the United States to serve as co-lead plaintiff." *Id.*; *see also Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Sleep No. Corp.*, 2022 WL 1607306, at *6 (D. Minn. May 20, 2022) (appointing a domestic institution as co-lead plaintiff alongside a foreign individual and finding that "the appointment of an individual investor and institutional investor as co-plaintiffs will ensure adequate representation of the class").

**D.    In the Alternative, Dearborn Requests Limited Discovery to Determine Mr. Chung's Adequacy**

Although Dearborn believes that Mr. Chung's motion should be rejected out of hand for failing to meet Rule 23's basic requirements, it respectfully requests that, in the alternative, the Court allow very limited discovery to allow other movants and the Court to accurately identify Mr. Chung and evaluate his adequacy.  The PSLRA allows for "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iv).   Courts generally allow for limited discovery where there are "serious questions concerning [a movant's] adequacy and typicality." *Coan v. B. Riley Fin., Inc.*, 2024 WL 5301847, at *4 (C.D. Cal. Aug. 8, 2024); *Averza v. Super Micro Computer, Inc.*, 2024 WL 5112222, at *5 (N.D. Cal. Dec. 12, 2024) (ordering limited discovery where there were "serious questions about . . . how [movant] would oversee this litigation if appointed as lead plaintiff"). Here, such discovery is warranted given the complete dearth of information provided by Mr. Chung that can be used to evaluate his adequacy.  Even basic identifying information such as Mr. Chung's full legal name, his age, specific educational background, and a detailed professional history would allow Dearborn's counsel to identify Mr. Chung and investigate his adequacy, ensuring that the Class receives a satisfactory representative. *See* DeJong Decl., Ex. D ¶ 6 (listing the biographical details which would make it possible to positively identify Mr. Chung).[7]

---

[7] Even without discovery, the Court could require Mr. Chung to provide sufficient information for the Court to identify him and evaluate his adequacy. *See Desilvio v. Lion Biotechnologies, Inc.*, No. 17-cv-02086 (N.D. Cal. July 7, 2017), ECF No. 35 at 1 (requiring movants to submit declarations detailing basic information including their occupations and how each individual "came to retain his/her respective lawyer(s)"). *Id.*

**CONCLUSION**

For the reasons set forth above and in its opening brief, Dearborn respectfully requests that the Court appoint Dearborn as Lead Plaintiff, approve its selection of Labaton as Lead Counsel for the Class, and deny the competing motions.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:25-cv-01424-AR

DATED: October 28, 2025        Respectfully submitted,

STOLL STOLL BERNE LOKTING & SHLACHTER P.C

By: s/*Timothy S. DeJong*
    Keith A. Ketterling, OSB No. 913368
    Timothy S. DeJong, OSB No. 940662
    Cody Berne, OSB No. 142797
    Chloe Jasper, OSB No. 253957

209 Southwest Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:        kketterling@stollberne.com
                tdejong@stollberne.com
                cberne@stollberne.com
                cjasper@stollberne.com

*Liaison Counsel for Proposed Lead Plaintiff*

Francis P. McConville (admitted *pro hac vice*)
Connor C. Boehme (admitted *pro hac vice*)
LABATON KELLER SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone:    (212) 907-0700
Facsimile:    (212) 818-0477
Email:        fmcconville@labaton.com
                cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:25-cv-01424-AR