Eryn Karpinski Hoerster, OSB # 106126
**FOSTER GARVEY PC**
121 SW Morrison St., 11th Floor
Portland, OR 97204
Telephone: 503-228-3939
Fax: 503-226-0259
eryn.hoerster@foster.com

*Attorneys for Defendant Partners Group (USA) Inc.*
[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| IN RE KINDERCARE LEARNING COMPANIES, INC. SECURITIES LITIGATION | Case No. 3:25-CV-01424-AR<br><br>**DEFENDANT PARTNERS GROUP (USA) INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....1
ARGUMENT ....2
A. The AC Fails to Plead that PGUSA Controlled KLC ....2
**1.** No Control Over KLC Through Share Ownership ....3
**2.** No Control Over KLC Through Ability to Appoint Directors ....6
**3.** KLC's Risk Disclosures Do Not Establish Control ....8
B. The Opposition's Improper New Arguments Do Not Show Control ....10
**1.** Plaintiffs Cannot Now Amend the AC Through New Allegations ....10
**2.** Plaintiffs' New Allegations Fail to State a Claim ....12
**a.** Plaintiffs Do Not Plead PGUSA's Control Over Board Appointees ....12
**b.** Plaintiffs Do Not Plead PGUSA's Control Over KLC's Management and Operations ....13
CONCLUSION ....16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abbot v. Experian Info. Sols., Inc.*,
179 F. Supp. 3d 940 (N.D. Cal. 2016) ....10

*Bao v. Solarcity Corp.*,
2015 WL 1906105 (N.D. Cal. Apr. 27, 2015) ....13

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ....2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....2

*Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*,
748 F. Supp. 2d 1246 (W.D. Wash. 2010) ....4

*Brady v. Cenlar, FSB*,
2025 WL 1194212 (D. Or. Apr. 24, 2025) ....1

*Chechele v. Scheetz*,
819 F. Supp. 2d 342 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012) ....12

*Cyph, Inc. v. Zoom Video Commc'ns., Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022) ....11

*Daily Income Fund v. Fox*,
464 U.S. 523 (1984) ....9

*El Paso Fireman & Policemen's Pension Fund v. InnovAge Holding Corp.*,
709 F. Supp. 3d 1296 (D. Colo. 2023) ....5, 10

*Fouad v. Isilon Sys., Inc.*,
2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ....4

*Freeland v. Iridium World Commc'ns, Ltd.*,
2004 WL 7325422 (D.D.C. Sept. 1, 2004) ....8

*Golub v. Gigamon*,
372 F. Supp. 3d 1033 (N.D. Cal. 2019) ....3

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ....3, 6

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013)....................3, 8, 9

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009)....................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005)....................14

*In re Friedman's Inc. Sec. Litig.*,
385 F. Supp. 2d 1345 (N.D. Ga. 2005)....................8, 10

*In re Glob. Crossing, Ltd. Sec. Litig.*,
2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005)....................2

*In re Glob. Crossing, Ltd. Sec. Litig.*,
471 F. Supp. 2d 338 (S.D.N.Y. 2006)....................8

*In re Kosmos Energy Ltd. Sec. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. 2013)....................9

*In re Musicmaker.com Sec. Litig.*,
2001 WL 34062431 (C.D. Cal. June 4, 2001)....................6

*In re SemGroup Energy Partners, L.P.*,
729 F. Supp. 2d 1276 (N.D. Okla. 2010)....................15

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
2000 WL 1727405 (N.D. Cal. Sept. 29, 2000)....................6

*Lozada v. TaskUs, Inc.*,
710 F. Supp. 3d 283 (S.D.N.Y. 2024)....................15

*McKenna v. Smart Techs. Inc.*,
2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012)....................9

*Mingbo Cai v. Switch, Inc.*,
2019 WL 3065591 (D. Nev. July 12, 2019)....................15

*Minor v. Fedex Off. & Print Servs., Inc.*,
182 F. Supp. 3d 966 (N.D. Cal. 2016)....................11

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003)....................2

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996)....................3, 6, 15

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. 2020) ....................................................................16

*S.E.C. v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ..........................................................................3, 6

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ..........................................................................10

*Steinberg v. Schmitt Indus., Inc.*,
2024 WL 1007879 (D. Or. Feb. 2, 2024)..............................................................2

*Twombly v. Bell Atl. Corp.*,
425 F.3d 99 (2d Cir. 2005).................................................................................2

*Wang v. Zymergen Inc.*,
744 F. Supp. 3d 995 (N.D. Cal. 2024) .............................................................. *passim*

*Yi v. GTV Media Grp. Inc.*,
2021 WL 3500920 (S.D.N.Y. Aug. 6, 2021) .......................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................................2

## INTRODUCTION

Plaintiffs' opposition to PGUSA's motion to dismiss ("Opposition" or "Opp.")[1] all but concedes that the amended complaint ("AC") fails to state a claim that PGUSA exercised actual control over KLC. In its seven-page motion to dismiss, PGUSA outlined how the AC's sparse allegations about PGUSA do not state a control claim based on various investment funds' ownership of KLC stock, the ability to appoint individuals to KLC's board, or how those facts are described in KLC's risk disclosures. Plaintiffs' 22-page Opposition effectively acknowledges that the AC does not state a claim by making a bevy of new allegations found nowhere in the AC and submitting dozens of pages of new exhibits not referenced in the AC. Of course, "[a] brief in opposition to a motion to dismiss cannot be used to amend the complaint." *Brady v. Cenlar, FSB*, 2025 WL 1194212, at *5 (D. Or. Apr. 24, 2025). This alone is reason to dismiss the AC.

But even if the Court were to consider these belated allegations, they do not save Plaintiffs' claim. Plaintiffs' new allegations rest on the assertions that PGUSA "exerted" control over KLC's "Board Appointees," (Opp. 2, 9-11), high-level corporate strategy (*id.* at 18-21), and "the Offering itself" (*id.* at 2, 21). The problem for Plaintiffs is that the Opposition offers bare conclusions to this effect unadorned by any supporting factual allegations. Simply put, Plaintiffs allege no facts that show PGUSA had actual control over KLC at the time of the at-issue statements. To argue otherwise, the Opposition mischaracterizes the Offering Documents, cites inapposite cases, and misstates the legal standard in an attempt to excuse Plaintiffs from pleading what the Ninth Circuit has said is required to avoid dismissal.

PGUSA should be dismissed from this case—both because the AC fails to allege a primary violation of the securities laws, and because neither the AC nor Plaintiffs' Opposition adequately

[1] Terms not defined herein have the same meaning as in PGUSA's motion to dismiss (ECF 102).

alleges that PGUSA exercised control over KLC.

## ARGUMENT

### A. The AC Fails to Plead that PGUSA Controlled KLC

Contrary to Plaintiffs' assertion (Opp. 8-9), the Ninth Circuit has repeatedly confirmed that a plaintiff must plead that "the defendant *exercised actual power or control* over the primary violator." *See, e.g.*, *Steinberg v. Schmitt Indus., Inc.*, 2024 WL 1007879, at *20 (D. Or. Feb. 2, 2024) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009)) (emphasis added). It is Plaintiffs who misstate the Ninth Circuit standard through substituted text and ellipses to come up with their preferred framing that Plaintiffs must show only "that the defendant [controlled a] . . . primary violator." Opp. 8 (misquoting *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003), which actually demands a showing "that the defendant exercised actual power or control over the primary violator"). Plaintiffs' framing is not the law. Indeed, in stating that "naked allegations of control . . . will typically suffice" (Opp. 13 (citing *In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 2990646, at *8 n.8 (S.D.N.Y. Nov. 7, 2005)), Plaintiffs quote a decision that rested on the notice pleading standard struck down by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),[2] and in so doing significantly understate their pleading burden.

In any event, Plaintiffs concede (Opp. 20 & n.10) that numerous courts in the Ninth Circuit have held that a plaintiff must show that the defendant controlled the "management and policies"

[2] *Global Crossing* cites *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005), for its standard that "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 2005 WL 2990646, at *4, *8. That standard was reversed by the Supreme Court. *Twombly*, 550 U.S. 544; *see also* Opp. 9-10 (citing *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *26 (C.D. Cal. July 1, 2008) (also erroneously citing the "naked allegations of control" standard)).

of the company or directed its day-to-day affairs in order to show actual power or control. *E.g.*, *Golub v. Gigamon*, 372 F. Supp. 3d 1033, 1052-53 (N.D. Cal. 2019) (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996))[3]; Opp. 18 (conceding control of "management and operations" is required). As a case cited by Plaintiffs confirms, "the applicable standard is whether 'the [alleged control] person managed the company on a day-to-day basis and was involved in the formulation of financial statements, which is sufficient to 'presume control over the transactions giving rise to the alleged securities violation."' *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *34 (C.D. Cal. Aug. 8, 2013) (quoting *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011)).

The AC fails to plead control under this standard. The Opposition does not rehabilitate the three deficient "indicia" of control that the AC asserts in barebones form.

### 1. No Control Over KLC Through Share Ownership

As an initial matter, Plaintiffs mischaracterize the KLC Offering Documents in a continued effort to lump together seven distinct investment vehicles into one non-existent stockholder that allegedly held a 90% stake in KLC before its IPO.[4] Opp. 12-16. Although the Registration

---

[3] Plaintiffs improperly deem *Paracor* "inapposite because it pre-dates the Ninth Circuit's holding in *Howard*." Opp. 20 n.10. But the Ninth Circuit in *Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000), did not overrule *Paracor* or the standard that a defendant must exert power over "management and policies" or day-to-day operations. *Howard* merely confirmed that a plaintiff need not show that a control defendant "*used* that power to cause the underlying violation"—but PGUSA's motion to dismiss never argued that Plaintiffs must show such "culpable participa[tion]." *See Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1011 (N.D. Cal. 2024) (emphasis in original) (discussing *Howard*). To support their claim that the "weight of Ninth Circuit authority" rejects a "day-to-day operations" standard, Plaintiffs cite only one district court case from the *Tenth* Circuit and one case that considers the standard only in dicta. Opp. 20.

[4] Contrary to Plaintiffs' argument (Opp. 14, n.7), PGUSA's stipulation that it would not argue that "any entity affiliated with PGUSA . . . is in fact the proper party to this lawsuit," ECF 74, is irrelevant here. PGUSA is not arguing that one of its affiliates is the proper party. Even if Plaintiffs had named all of PGUSA's affiliated entities as defendants, the claim would be subject to dismissal

Statement identified "PG" as KLC's primary stockholder, it specifically defined "PG" as "*investment funds affiliated with, advised by or managed by* affiliates of Partners Group Holding AG [PGH]"—thus confirming that no one entity was the "primary stockholder." Ex. 1 at 8, 104 (emphasis added). Those seven investment funds each had different management structures and investors and all but one fund had a unique general partner. Ex. 1 at 166.

At the pleading stage, the Court need not make any findings about how these circumstances impact control because the burden is on Plaintiffs to offer factual allegations permitting the inference that the funds can be grouped together. *See Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) (dismissing claims when "Plaintiffs make no allegations of collective action in their complaint"). Yet the AC offers nothing on this score—it does not allege that the funds had the same investment objectives, the same (or similar) beneficial owners, or that they voted their KLC stock in a uniform way. Rather, Plaintiffs offer the fact-free declaration that the funds "acted together when purchasing KinderCare for 1.5 billion in 2015" and "acted together [at unspecified times] to designate a majority of KinderCare's directors on the board." *See* Opp. 15. But these conclusions lack any supporting facts—for example, the AC never asserts that the seven funds even existed and were invested in KLC when these events took place. *See Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1258 (W.D. Wash. 2010) (rejecting "shorthand" control allegations that did not identify actions by entity as opposed to affiliates).[5]

---

because Plaintiffs improperly group together these distinct investment vehicles to make their control arguments.

[5] The Opposition also misrepresents the Offering Documents in stating that "Partners Group sold around 20% of its ownership stake" in the IPO. Opp. 4 (citing Ex. 1 at 165). The Registration Statement reflects that investment funds affiliated with PGH would own the same number of shares pre and post-IPO. Ex. 1 at 165. The confusion appears to stem from the fact that the funds'

The AC's conclusory coordination allegations make this case far different from *El Paso Fireman & Policemen's Pension Fund v. InnovAge Holding Corp.* (Opp. 14, 20) where the court considered specific allegations of coordinated shareholder voting power. 709 F. Supp. 3d 1296, 1351-53 (D. Colo. 2023) (because each of two control defendants yielded veto power over the other, it could be inferred under Tenth Circuit standard that the shareholders "acting together [i.e. when they did not veto] collectively controlled a majority of the voting power"). This case is also very unlike *In re Charles Schwab Corp. Sec. Litig.* (Opp. 16), where the dispute concerned whether a parent company, an underwriter, and a distributor of shares of a fund were liable as controllers of an investment fund in a case about alleged misstatements about the fund's risk profile. 257 F.R.D. 534 (N.D. Cal. 2009). Other than that this case also involves investment funds, it has no relevance to whether various funds (as investors) can be grouped together for purposes of assessing control over the public company in which they invested. Likewise, in *Zymergen* (Opp. 15), the court did not even address arguments as to whether affiliated funds of an alleged entity control defendant were properly grouped. 744 F. Supp. 3d at 1002-03, 1011 n.7.

But even if the funds could be lumped together into one entity that held a majority of KLC's outstanding stock or even if the Court were to look at any one fund in particular, *see* Opp. 14 n.7, that would not be enough. The Ninth Circuit has not deemed a majority shareholding sufficient on its own for control-person liability. The sole case Plaintiffs cite for the proposition that the regulation defining "control" "appears to contemplate that a majority or otherwise controlling shareholder is prima facie a controlling person" is again a pre-*Iqbal/Twombly* case that excuses plaintiffs from pleading facts sufficient to show control under the notice pleading standard that is

---

ownership percentage was reduced after the IPO because, of course, KLC sold shares to other investors via the IPO.

no longer good law. Opp. 12 (citing *In re Musicmaker.com Sec. Litig.*, 2001 WL 34062431, at *17 (C.D. Cal. June 4, 2001)). In fact, the law that has developed over the last 25 years is to the contrary and requires plaintiffs to allege facts showing that even a large shareholder actually exercised control over the company's management and policies or day-to-day operations—as Plaintiffs' cited cases confirm. *See* Opp. 12-13 (citing cases involving investor defendants that considered other factors in addition to share ownership, such as use of control to sell shares); *see also Zymergen*, 744 F. Supp. 3d at 1011 (section 15 "does not itself define control other than by example"). Indeed, the Ninth Circuit has repeatedly confirmed that control person liability cannot be inferred solely from a defendant's status – whether that defendant is the CEO, a director, or, as here, an alleged majority shareholder. *See Todd*, 642 F.3d at 1223; *Howard*, 228 F.3d at 1065; *Paracor*, 96 F.3d at 1163; *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) ("[A] significant stock position . . . does not by itself carry an allegation of control person liability.").

**2. No Control Over KLC Through Ability to Appoint Directors**

Plaintiffs next assert, again only in conclusory form, that PGUSA controlled KLC through its "power to elect a majority of KinderCare directors." Opp. 16. But again, the Ninth Circuit has held that even a director is not a control person merely by his status as a director, *see Howard*, 228 F.3d at 1065, so it cannot be that a shareholder becomes a control person merely by appointing those directors. Instead, Plaintiffs must allege *how* PGUSA purportedly controlled KLC through board appointments. Plaintiffs do not do so.

The section of Plaintiffs' Opposition on this point does not cite the AC a single time. That is not surprising given that the AC alleges only that PGUSA appointed five members of KLC's eight-member Board, only three of whom were employed by Partners Group. AC ¶¶ 49, 390. The

AC makes no other allegations as to how PGUSA exerted control over KLC through these five directors. The AC does not even plead the names of the two PGUSA-appointed directors who were not employees, whether any of the PGUSA-appointed five directors sat on committees, or what roles they had in the IPO other than that they "reviewed and contributed to the Offering Documents and signed the Company's Registration Statements." AC ¶¶ 37-43. Even if the law permitted Plaintiffs to assume control from PGUSA's nomination of three directors who were Partners Group employees (it does not), that is not a majority of the KLC board.[6] Likewise, the unremarkable assertions that members of the Board exercised certain oversight over KLC's management (Opp. 17) and that some cases have found that a *director* plausibly controlled a primary violator based on signing its SEC filings (Opp. 18) say nothing about whether the entity that appointed the director exercised control over the director and, in turn, also control over the primary violator.

Plaintiffs' cited cases are not to the contrary, as each involved complaints with factual allegations of control by entities that appointed individual directors. In *In re Global Crossing, Ltd. Sec. Litig.*, the court held that a control person claim was adequately pled in a *third* amended complaint based on "concrete factual allegations of control," including that the board designees acted on behalf of their investor-employers in specifically identified "misdealings" against the interests of the issuer company's shareholders. 471 F. Supp. 2d 338, 352-53 (S.D.N.Y. 2006) (Opp. 11); *see also Am. Apparel*, 2013 WL 10914316, at *33-37 & n.262 (Opp. 17-18) (control

---

[6] As discussed further below, *infra* at Section B, the Court should not consider the new factual allegations as to these appointees that Plaintiffs try to shoehorn into the AC through their Opposition and additional exhibits. In any event, there is no support for Plaintiffs' argument that PGUSA controlled KLC because certain directors served on committees. Opp. 17. The cases Plaintiffs cite relate to whether *directors* may control a company through committee appointments or other special status, not whether the entity that appointed them has control because of the directors' status.

inferred not just from board appointments but from "additional facts" that control defendant's own disclosures evidenced that it "intended to influence American Apparel's management and exert control over American Apparel's strategic decision-making through its designated directors on [the] board"); *Freeland v. Iridium World Commc'ns, Ltd.*, 2004 WL 7325422, at *7 (D.D.C. Sept. 1, 2004) (Opp. 16-17) (court relied not just on board appointments but allegations that control defendant Motorola performed "most of [the] work" for the primary violator, "a puppet corporation for which Motorola pulled the strings").

By contrast, where (as here) there are no allegations that the alleged control person controlled the board appointees who in turn controlled the corporation, Plaintiffs have not pled a claim for control person liability. *See In re Friedman's Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1375 (N.D. Ga. 2005) (Opp. 15) (dismissing alleged control defendant that had "ability to appoint seventy-five percent of the Company's board of directors" because "Plaintiffs have not alleged any facts indicating [the defendant] was responsible for the specific conduct on which Plaintiffs' claims are founded" consistent with Eleventh Circuit standard); *see also Am. Apparel*, 2013 WL 10914316, at *34-35 (dismissing control person claim as to statements made before defendant had filled its board seats). In other words, the allegation that PGUSA appointed a majority of KLC's directors and that those directors signed the Offering Documents says nothing about PGUSA's purported control of KLC.

### 3. KLC's Risk Disclosures Do Not Establish Control

KLC's disclosure that it expected to be a "controlled company" and that PGUSA "could" exercise a controlling interest over KLC after the IPO do not show control. Plaintiffs offer no response to the point that NYSE definitions of a "controlled company" are not the same as the elements of a control-person claim under the Securities Act. Mot. 7 (citing *In re Kosmos Energy*

*Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676-77 (N.D. Tex. 2013)). Plaintiffs' focus on KLC's disclosure that PGUSA might exercise its alleged "veto power" rights over CEO hiring, equity issuances and debt assumptions, and other corporate acquisitions (Opp. 11) ignores that these hypothetical future activities do not show whether PGUSA controlled KLC at the time of the IPO Offering Documents. Moreover, these are precisely the sort of corporate decisions that are generally reserved to shareholders in the ordinary course and do not permit courts to disregard the legal distinction between a corporation and its shareholders. *See, e.g.*, *Am. Apparel*, 2013 WL 10914316, at *35 ("standard loan terms," including lender's right to "approve leases," "control secondary financing," and similar "terms in a loan agreement, by themselves, do not sufficiently demonstrate elements of control") (citation omitted); *see also Daily Income Fund v. Fox*, 464 U.S. 523, 530 (1984) (recognizing that it is a "basic principle of corporate governance that the decisions of a corporation . . . should be made by the board of directors or the majority of shareholders"); Mot. 4 & n.3 (providing "advisory services" does not show control).

Plaintiffs cite two cases where the court found that risk disclosures suggested control, but both involve specific other allegations of control that are absent here. *See McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *20 (S.D.N.Y. Apr. 3, 2012) (risk disclosure of "concentrated control" by two co-founders plausibly supported inference that they coordinated to vote in favor of the IPO itself, in which each co-founder benefited by selling millions of shares); *Friedman's*, 385 F. Supp. 2d at 1352, 1376 (finding allegations that individual controlled 100% of Company's Class B stock and "improperly influenced the Company's dealings" with an affiliate he owned were, in combination with control disclosure, sufficient to allege his control). Plaintiffs' other cited cases about control over hiring decisions and another kind of shareholder "veto power" are likewise inapt. *Cf. Yi v. GTV Media Grp. Inc.*, 2021 WL 3500920, at *3 (S.D.N.Y. Aug. 6, 2021)

(Opp. 19) (defendant's exertion of control *pre-offering* to influence a hiring decision, combined with his funding of the offering itself and solicitation of potential investors, gave rise to plausible inference of control); *InnovAge*, 709 F. Supp. 3d at 1352 (discussing a completely different type of "veto power" as between two shareholders).

**B. The Opposition's Improper New Arguments Do Not Show Control**

**1. Plaintiffs Cannot Now Amend the AC Through New Allegations**

It is well-established in the Ninth Circuit that a plaintiff may not amend a complaint through arguments or facts raised for the first time in an opposition to a motion to dismiss. *See* *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *Abbot v. Experian Info. Sols., Inc.*, 179 F. Supp. 3d 940, 946 (N.D. Cal. 2016) ("Plaintiff cannot avoid dismissal by alleging new facts in an opposition to a motion to dismiss").

Here, the Opposition goes beyond the AC in two significant ways. *First*, it makes its lead argument that PGUSA "controlled the primary violators of §§ 11 and 12(a)(2), including Individual Defendants Benjamin Russell, Joel Schwartz, Preston Grasty, Christine Deputy, and Michael Nuzzo (collectively 'the Board Appointees')." Opp. 1, 9-11. This new Section 15 claim is untethered to the AC. Rather, the AC's Section 15 claim is directed *solely* at PGUSA's alleged control over *KLC*. AC ¶ 390 (alleging that "Partners Group controlled ***KinderCare*** at the time of the IPO"); ¶ 394 ("[a]s a control person of ***KinderCare***, Partners Group is liable jointly and severally with and to the same extent as KinderCare for its violations of §11 and §12(a)(2) of the Securities Act.") (emphases added). Although the AC declares in passing (and with no alleged

facts) that PGUSA controlled "the Board," AC ¶ 49, it pleads no claim that PGUSA controlled any of the Individual Defendants as the primary violator of the securities laws. The Court may disregard a cause of action that is not pled in the complaint. *See Minor v. Fedex Off. & Print Servs., Inc.*, 182 F. Supp. 3d 966, 978 (N.D. Cal. 2016) ("Because Plaintiff does not assert this claim in the pleadings . . . the Court does not consider the allegations in Plaintiff's oppositions to the instant motions.").

*Second*, the Opposition is filled with allegations that Plaintiffs attempt to advance for the first time in their brief. Plaintiffs argue that PGUSA obtained certain post-IPO rights (Opp. 5-6, 19), controlled dividend payments from KLC to PGUSA (*id.* at 4), and directed the structure of the IPO in specific ways (*id.* at 6, 21)—none of which were pled in the AC. These new allegations and theories should not be considered. *See Cyph, Inc. v. Zoom Video Commc'ns., Inc.*, 642 F. Supp. 3d 1034, 1043 (N.D. Cal. 2022) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

To try to bolster their new claims, Plaintiffs also impermissibly seek to introduce and rely upon: (1) a Registration Rights Agreement ("Ex. A"); (2) a Stockholder Agreement ("Ex. B"); and (3) a letter from Senator Jeffrey A. Merkley ("Ex. C"). Opp. 4-5. Although Plaintiffs couch these as routine SEC filings and public correspondence subject to incorporation by reference and/or judicial notice (ECF 122), it is clear Plaintiffs include these documents now only to try to bridge the gap between their insufficient allegations in the AC and the pleading standard they must meet. Plaintiffs argue that a party should not use exhibits to "dispute the facts of the AC" and should not "characteriz[e]" exhibit contents (ECF 121 at 2) when they do the same with Exhibits A through C and the supposed "facts" they include. *See* ECF 122 at 4 (asking the Court to consider the exhibits "for the facts regarding Partners Group's control of KinderCare contained therein"). The

Court should reject Plaintiffs' improper request to consider these exhibits. *See, e.g.*, *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 348 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012) (declining plaintiff's request to incorporate credit agreement when plaintiff's complaint did not rely on it).

**2. Plaintiffs' New Allegations Fail to State a Claim**

Even if the Court were to consider the new factual allegations and arguments raised for the first time in the Opposition, they still fail to state a claim for control liability against PGUSA.

**a. Plaintiffs Do Not Plead PGUSA's Control Over Board Appointees**

Plaintiffs' new argument that PGUSA "controlled the five Partners Group Board Appointees," each of whom is an alleged primary violator, is unsupported by any factual allegations. Neither the AC nor any of the new documents Plaintiffs ask the Court to consider allege such control or allege that PGUSA appointed directors "in order to manage" PGUSA's investment in KLC. *Cf.* Opp. 9.

As to the three appointees who were employed by Partners Group, Plaintiffs make the bare accusation (again found nowhere in the AC) that PGUSA "controlled Board Appointees Russell, Schwartz, and Grasty as their employer." Opp. 10. Plaintiffs cite no authority that they may ask the Court to draw such an inference based solely on employment and no other factual allegations. *Cf. Zymergen*, 744 F. Supp. 3d at 1012 (allegation that control defendant "controlled [the appointee] and that [the appointee] acted as [the control defendant's] agent" on the board are "legal conclusions which must be ignored at this stage"); *Bao v. Solarcity Corp.*, 2015 WL 1906105, at *2 (N.D. Cal. Apr. 27, 2015) (court need not accept "allegations that are merely conclusory"). Indeed, Plaintiffs do not dispute that the directors owed fiduciary duties to KLC, and they concede that numerous authorities recognize that appointees are presumed to act within the scope of their

fiduciary duties, absent allegations (lacking here) that they were instead acting to serve their employers' interests. *See* Mot. 6-7. Plaintiffs try to distinguish these cases based on the amount of board seats or percentage of shares a control defendant held (Opp. 10 & 18 n.9), but those factors have no relevance to general principles about directors' fiduciary duties.[7]

In particular, *Zymergen* (Opp. 10-11) supports PGUSA, not Plaintiffs, because it confirmed that the court may not automatically conclude that an investor controls its appointees to a company's board. Instead, the court examined the specific factual allegations and concluded that two investors were adequately alleged to have controlled their appointees primarily because each "had to receive approval" from the entity that appointed them "to make decisions in his capacity as a board member." 744 F. Supp. 3d at 1011-12. No such allegations are (or could be) made here. But as to a third appointee, a co-owner of the alleged control defendant, the court rejected conclusory claims that the defendant controlled the appointee where he did not "ha[ve] to receive approval . . . to make decisions as a board member." *Id.* at 1012. The same result should hold here, because the AC (and the Opposition) contain no allegations that any director was acting at PGUSA's direction or control.

#### b. Plaintiffs Do Not Plead PGUSA's Control Over KLC's Management and Operations

*First*, Plaintiffs offer the Registration Rights Agreement to argue that PGUSA controlled "KinderCare's finances and operations" including through rights to effect additional security offerings and to "inspect . . . corporate documents at its request." Opp. 19-20. This document

[7] None of the control cases cited by Plaintiffs (Opp. 11) held that it would inherently be a "factual dispute" whether a director can be presumed to have acted under the control of another entity absent any allegations to the contrary. Rather, each case confirmed that the court must assess whether the plaintiff pleads specific allegations to suggest a control relationship with the entity that appointed the director.

says no such thing. For starters, the rights that PGUSA acquired under the Registration Rights Agreement did not become effective until "following the closing of the IPO." Ex. A at 1. As with the risk factor about rights PGUSA might exercise in the future, the future granting of rights says nothing about whether PGUSA controlled statements in the offering itself. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 457, 459 (S.D.N.Y. 2005) (no control liability pled when plaintiffs failed to allege control at the time of the IPO). The same is true for the rights conferred to PGUSA in the Stockholders Agreement with respect to board appointment rights *following* the IPO. *See* Opp. 5-6.

Moreover, the rights granted to PGUSA undermine any inference of control. For instance, Plaintiffs allege that this separate agreement granted PGUSA rights to inspect a limited set of KLC documents, but that limited right confirms that PGUSA did not generally control how the business functioned. Likewise, the fact that KLC agreed to take administrative steps to facilitate PGUSA selling some of its KLC stock pertains only to implementation of PGUSA's own investment decisions and says nothing about whether PGUSA had the right to exercise control over the Company's management and operations. *See, e.g.*, *Paracor*, 96 F.3d at 1161 & n.13 (rejecting control allegations against lender with numerous contractual rights to require company actions).[8]

*Second*, Plaintiffs allege for the first time that PGUSA controlled KLC's IPO, which Plaintiffs argue (without factual support) was undertaken to "pay back debt that [PGUSA] had forced KinderCare to assume" to pay two dividends to PGUSA. Opp. 2, 21. None of these

[8] *Lozada v. TaskUs, Inc.*, 710 F. Supp. 3d 283, 317 (S.D.N.Y. 2024) (Opp. 19) did not independently evaluate a control-person claim; the language Plaintiffs quote is from the court's discussion of a Section 12 claim against an investor entity that was "entire[ly]" responsible for the commencement of an offering pursuant to its registration rights and was "deeply involved in the day-to-day management of the company," but who was nonetheless not a proper defendant under Section 12.

allegations relating to KLC's dividend payments and debt accrual support the Opposition's conclusory new arguments that PGUSA "controlled KinderCare's borrowing" leading up to the IPO, or "used dividend recapitalization to enrich itself while maintaining its 90% control over the company." Opp. 2, 21. There are no allegations linking the pre-IPO dividend payments to the sort of benefits from the offering itself that courts consider potentially relevant to control. *Cf. Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *4 (D. Nev. July 12, 2019) (Opp. 21) (CEO control person controlled the IPO by giving himself 10-1 voting rights and personally received $94.6 million following the IPO); *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1303 (N.D. Okla. 2010) (Opp. 21) (finding sufficient allegations of control when defendants signed memoranda authorizing asset transfers underlying the offering and reaped tens of millions in distributions). All Plaintiffs allege is that KLC's private company predecessor took on debt and made two dividend payments to its shareholders long before the IPO. Indeed, one of the alleged dividend payments was in 2017—*seven years* before the KLC IPO. Opp. 21. Plaintiffs simply do not allege facts (in the Opposition, much less in the AC itself) to support their rhetoric that PGUSA engaged in "maneuvers" or the "sorts of financial dealings" that would plausibly support their conclusion that PGUSA "controlled the Offering." Opp. 21.

***

At bottom, the AC's theories of control over KLC, either alone or in combination, lack the factual allegations that have led other courts to find control plausibly pled as to investor-defendants. The Opposition relies throughout on *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367 (N.D. Cal. 2020) (which was later vacated). Opp. 12, 13, 21. There, the court found control pled against three venture capital firms only based on allegations that they "caused Slack to effectuate" an unusual direct listing benefiting early investors "in order to cash out their shares." *Id.* at 393.

No such allegations are present in the AC here. Likewise, in *Zymergen*, the court held that allegations that three investors "helped write Zymergen's registration statement," "could have blocked the challenged statements from being issued," and had a "formal agreement to vote their shares together on other key issues," taken together were sufficient to allege "the power to control Zymergen as it prepared for and registered its public offering." 744 F. Supp. 3d at 1012-13. And as Plaintiffs note, the *Zymergen* court had dismissed control-person claims on plaintiffs' first amended complaint as insufficiently pled. Opp. 16 & n.8. Because the AC does not allege the kind of specific allegations of control found in *Pirani* and *Zymergen*, the same dismissal result should follow here.

**CONCLUSION**

For the foregoing reasons, as well as those set out in PGUSA's Motion to Dismiss and KinderCare's Motion to Dismiss and reply memorandum, Plaintiffs' claim against PGUSA should be dismissed.

Dated: July 8, 2026

Respectfully submitted,

By: */s/ Eryn Karpinski Hoerster*

Eryn Karpinski Hoerster, OSB # 106126
**FOSTER GARVEY PC**
121 SW Morrison St., 11th Floor,
Portland, OR 97204
Telephone: 503-228-3939
Fax: 503-226-0259
eryn.hoerster@foster.com

**LATHAM & WATKINS LLP**
Jeff G. Hammel (*pro hac vice*)
Jason C. Hegt (*pro hac vice*)
Melange T. Gavin (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
Fax: 212-751-4864

jeff.hammel@lw.com
jason.hegt@lw.com
melange.gavin@lw.com

Lauren C. Barnett (*pro hac vice*)
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Telephone: 424-653-5500
Fax: 424-653-5501
lauren.barnett@lw.com

*Attorneys for Defendant Partners Group (USA) Inc.*