**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
Timothy S. DeJong, OSB No. 940662
Keith A. Ketterling, OSB No. 913368
Cody Berne, OSB No. 142797
Chloe Jasper, OSB No. 253957
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email: tdejong@stollberne.com
kketterling@stollberne.com
cberne@stollberne.com
cjasper@stollberne.com

*Liaison Counsel for Lead Plaintiff and the Class*

[Additional counsel on signature page.]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| IN RE KINDERCARE LEARNING COMPANIES, INC. SECURITIES LITIGATION | Case No. 3:25-cv-01424-AR<br>CLASS ACTION ALLEGATION<br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Defendants Waived Any Opposition to Plaintiffs' RJN .......... 2

B. Judicial Notice of the Merkley Letter Is Proper, and Its Existence Confirms the Materiality of KinderCare's Alleged Misstatements .......... 3

1. The Merkley Letter Is Judicially Noticeable for the Fact of Its Existence .......... 3

2. Defendants' Objections to the Merkley Letter Lack Merit .......... 5

3. The Existence of the Congressional Inquiry Described in the Merkley Letter Is Powerful Evidence of Materiality .......... 6

4. Defendants' McDonald's Analogy Only Confirms Materiality .......... 8

C. The Registration Rights and Stockholders Agreements Are Properly Incorporated by Reference .......... 9

III. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbot v. Experian Info. Sols., Inc.*,
179 F. Supp. 3d 940 (N.D. Cal. 2016) ....................10

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
460 F. Supp. 2d 1185 (E.D. Cal. 2006)....................4

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019)....................7

*Best Fresh LLC v. Vantaggio Farming Corp.*,
2021 WL 5444755 (S.D. Cal. Sep. 20, 2021) ....................2

*Chechele v. Scheetz*,
819 F. Supp. 2d 342 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012)....................10

*Cnty. of Santa Clara v. Trump*,
250 F. Supp. 3d 497 (N.D. Cal. 2017) ....................4

*Craven v. Shriners Hosps. for Child.*,
2023 WL 5237698 (D. Or. Aug. 15, 2023)....................4

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................10

*D & D Greek Rest. v. Great Greek Franchising*,
2021 WL 4459063 (C.D. Cal. May 19, 2021) ....................6

*In re Dermtech, Inc. Sec. Litig.*,
2024 WL 4941026 (S.D. Cal. Dec. 2, 2024)....................6

*Dogbe v. Lakes at Lemmon Valley, LLC*,
2025 WL 1368886 (D. Nev. May 12, 2025)....................3

*Gjovik v. Apple Inc.*,
2025 WL 637931 (N.D. Cal. Feb. 27, 2025) ....................2

*Greenwood v. FAA*,
28 F.3d 971 (9th Cir. 1994) ....................3

*In re Honest Co. Sec. Litig.*,
615 F. Supp. 3d 1149 (C.D. Cal. 2022) ....................8

*In re Intuitive Surgical Sec. Litig.*,
65 F. Supp. 3d 821 (N.D. Cal. 2014) ....7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....9

*McCracken v. Thor Motor Coach Inc.*,
2015 WL 13566918 (D. Ariz. Dec. 3, 2015) ....3

*Minor v. Fedex Office & Print Services, Inc.*
182 F. Supp. 3d 966 (N.D. Cal. 2016) ....11

*Roman v. Newsom*,
2026 WL 1765171 (C.D. Cal. Feb. 24, 2026)....2

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ....10

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ....4

*Sundaram v. Freshworks, Inc.*,
2023 WL 6390622 (N.D. Cal. Sept. 28, 2023) ....8

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976)....7

*In re Turbodyne Technologies Securities Litigation*,
2000 WL 33961193 (C.D. Cal. Mar. 15, 2000)....6, 10

**Rules**

LR 7-1(e)....2

17 C.F.R. §230.411(c)....9

Fed. R. Civ. P. 12(b)(6)....9

Fed. R. Evid. 106 ....10

Fed. R. Evid. 201(b)....4

Fed. R. Evid. 201(b)(2) ....4

## I. INTRODUCTION

Plaintiffs respectfully submit this Reply in further support of their Request for Judicial Notice and Incorporation by Reference ("Plaintiffs' RJN," ECF 122), filed in connection with Plaintiffs' Oppositions to the Motions to Dismiss by the KinderCare Defendants and Partners Group (ECF 118, 119). Plaintiffs' RJN requested that the Court take judicial notice of three exhibits attached to the Declaration of Jesse Jensen (ECF 120): the Registration Rights Agreement (Jensen Decl. Ex. A); the Stockholders Agreement (Jensen Decl. Ex. B); and a letter from Senator Jeffrey A. Merkley, Ranking Member of the Senate Committee on the Budget, to KinderCare and Partners Group, dated March 23, 2026 (the "Merkley Letter") (Jensen Decl. Ex. C).

No Defendant filed a brief in opposition to Plaintiffs' RJN in accordance with the Local Rules of this Court. Instead, Defendants scattered informal references to Plaintiffs' RJN across several separate reply briefs that they filed in support of their own motions to dismiss and their own request for judicial notice—filings that are differently situated procedurally and thus do not properly respond to Plaintiffs' RJN. As set forth below, Defendants' failure to oppose Plaintiffs' RJN constitutes waiver and Plaintiffs' RJN should be granted for that reason alone.

Even if the Court were to consider Defendants' scattered objections, their arguments fail. Well-established Ninth Circuit law makes clear that the Merkley Letter is judicially noticeable for the fact of its existence, which provides independent and powerful corroboration of the alleged material misstatements and omissions in the Offering Documents. Likewise, the Registration Rights and Stockholders Agreements are properly incorporated by reference into Plaintiffs' Complaint and are also properly before the Court.

## II. ARGUMENT

### A. Defendants Waived Any Opposition to Plaintiffs' RJN

At the outset, Defendants waived any opposition to Plaintiffs' RJN by failing to file any proper opposition to Plaintiffs' RJN.

Plaintiffs' RJN was filed on June 5, 2026 (ECF 122). Under Local Rule 7-1(e) of the District of Oregon, any opposition to a motion must be filed within fourteen (14) days of service of the motion unless otherwise ordered by the Court. No Defendant sought an extension of that deadline from Plaintiffs or from the Court; nor did any Defendant file any brief in opposition within the deadline prescribed by the Local Rules (June 19, 2026) or at any time thereafter.

Instead, the KinderCare Defendants' references to Plaintiffs' RJN appear in two filings dated July 8, 2026—more than a month after the RJN was filed, and well beyond the Local Rule 7-1(e) deadline: (1) KinderCare Defendants' Reply in Support of Their Request for Judicial Notice and Incorporation by Reference, ECF 128; and (2) KinderCare Defendants' Reply in Support of Motion to Dismiss the Consolidated Amended Complaint, ECF 127. Defendant Partners Group similarly addressed Plaintiffs' RJN only passingly in its own Reply in Support of Motion to Dismiss, ECF 126. None of these filings constitutes a proper opposition to Plaintiffs' RJN.

A party's failure to timely oppose a motion results in waiver of any opposition. Indeed, because courts have found waiver in these specific circumstances where a party did not submit an opposition to a request for judicial notice, the Court should treat it as unopposed. *See Gjovik v. Apple Inc.*, 2025 WL 637931, at *8 (N.D. Cal. Feb. 27, 2025) (finding that a "failure to timely oppose the request for judicial notice [is] a waiver of any argument challenging the request for judicial notice"); *see also Roman v. Newsom*, 2026 WL 1765171, at *11 (C.D. Cal. Feb. 24, 2026) (granting unopposed request for judicial notice); *Best Fresh LLC v. Vantaggio Farming Corp.*, 2021 WL 5444755, at *16 (S.D. Cal. Sep. 20, 2021) (failure to oppose may be deemed consent).

Defendants cannot bury argument opposing Plaintiffs' RJN in their reply briefing in support of altogether different motions. *Dogbe v. Lakes at Lemmon Valley, LLC*, 2025 WL 1368886, at *4 (D. Nev. May 12, 2025) (finding it "inappropriate to raise an [incorporation by reference] argument for the first time in a reply brief"); *McCracken v. Thor Motor Coach Inc.*, 2015 WL 13566918, at *2 (D. Ariz. Dec. 3, 2015) ("Courts 'are not like pigs, hunting for truffles buried in briefs,' and it would not be fair to require opposing counsel to engage in hunting expeditions either."). But even entertaining arguments not properly raised in a formal opposition, Defendants' scattered references to Plaintiffs' RJN buried in unrelated briefs insufficiently engage with the issues and should not be credited. *See, e.g.*, *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.").

For these reasons, the Court should grant Plaintiffs' RJN as unopposed, or, at a minimum, give no weight to Defendants' belated and informal objections.

**B. Judicial Notice of the Merkley Letter Is Proper, and Its Existence Confirms the Materiality of KinderCare's Alleged Misstatements**

While Defendants have waived any opposition to Plaintiffs' RJN for the reasons stated above, the limited arguments made by Defendants, even considered, provide no valid basis to deny judicial notice of the Merkley Letter. The letter is judicially noticeable for the fact of its existence, which shows that a sitting United States Senator has opened a formal congressional inquiry into the very conduct at issue. This fact corroborates the material falsity alleged in the Amended Complaint, and further contradicts Defendants' arguments otherwise.

**1. The Merkley Letter Is Judicially Noticeable for the Fact of Its Existence**

Plaintiffs seek judicial notice of the Merkley Letter for a single, narrow fact: on March 23, 2026—*after* the Amended Complaint was filed—Senator Jeffrey A. Merkley, as Ranking Member

of the Senate Committee on the Budget, formally sent a letter of inquiry to KinderCare and Partners Group concerning subjects that "align near identically with the issues at hand in this action," including KinderCare's safety practices, staffing, debt, and dividend payments. ECF 122 at 4.

Thus, judicial notice of the Merkley Letter falls squarely within Rule 201(b), which permits notice of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Merkley Letter is publicly available on the Senate Budget Committee's website, and its existence, authorship, and date are not subject to reasonable dispute. Courts in this Circuit routinely take judicial notice of official government correspondence for precisely this purpose. *See Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) ("[C]ourts routinely take judicial notice of letters published by the government."); *Craven v. Shriners Hosps. for Child.*, 2023 WL 5237698, at *1 n.1 (D. Or. Aug. 15, 2023) (letter from state labor board judicially noticeable as a record of an administrative body); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017) (noticing Attorney General letter as an official government record); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 460 F. Supp. 2d 1185 (E.D. Cal. 2006) (noticing agency letter to private entity as a public record). Indeed, Plaintiffs' RJN cited this same line of authority, and Defendants offer no case declining to notice comparable government correspondence for its existence. ECF 122 at 4-5.

Importantly, Plaintiffs do not ask the Court to accept the ***truth*** of any assertion within the letter. The existence-versus-truth distinction is dispositive: a court that notices a government letter for the fact that it was sent makes no finding about the accuracy of its contents. Plaintiffs seek notice only of the former: that the inquiry was initiated (and is ongoing), ***not*** that Senator Merkley's characterizations in the Merkley Letter are truth.

### 2. Defendants' Objections to the Merkley Letter Lack Merit

The two objections informally raised by the KinderCare Defendants in their RJN Reply (ECF 128 at 5-6) do not survive scrutiny.

***First***, the KinderCare Defendants contend that Plaintiffs improperly seek to "supplement" the Amended Complaint with a document "not alleged in the AC." *Id.* at 5-6 (citing *D & D Greek Rest. v. Great Greek Franchising*, 2021 WL 4459063, at *3 (C.D. Cal. May 19, 2021) and *M.B. v. City & Cnty. of S.F.*, 2024 WL 4049889, at *1 (N.D. Cal. Sep. 3, 2024)). Defendants' contention is inaccurate and self-refuting. As an initial matter, Defendants misleadingly omit that Senator Merkley only issued the Merkley Letter ***after*** the AC was filed—and thus the AC necessarily could ***not*** have included allegations about it.[1] In any event, Plaintiffs do not seek to add allegations or amend their pleading: Plaintiffs' RJN sought judicial notice of a public record that was created following the filing of the Amended Complaint, for the limited purposes of responding to Defendants' motions and providing context to the allegations and the Parties' arguments at hand.

Incidentally, the KinderCare Defendants themselves sought judicial notice of eleven exhibits purportedly for similar purposes, including an unrelated SEC filing by McDonald's and Department of Labor wage data (ECF 100, Defs' Exs. 11 and 10)—neither of which appears anywhere in the Amended Complaint. ECF 128 at 5. In other words, Defendants request that the Court take judicial notice of documents outside the four corners of the AC for Defendants' benefit, while ***also*** insisting that the Court is categorically prohibited from considering the existence of a congressional inquiry overlapping with the allegations and practices at issue. Defendants' cited

[1] Defendants' meritless criticism also reveals their own "hide-the-ball" tactics: while the Merkley Letter was issued weeks after the AC was filed, the Merkley Letter was issued weeks *before* Defendants filed their motions to dismiss—and yet Defendants made no mention to the Court that they had become subject to congressional inquiry that substantively overlapped with the allegations at issue here.

authorities do not justify their self-serving position, but at most instead concern attempts to inject new merits allegations where, *e.g.*, "[n]one of the relevant facts contained in the RJN are alleged in the [complaint]" (*D & D Greek Rest.*, 2021 WL 4459063, at *3). That is not the case here, as Plaintiffs invoke the Merkley Letter merely for the fact of its existence to corroborate and illuminate the existing allegations, which is entirely proper. *See, e.g.*, *In re Dermtech, Inc. Sec. Litig.*, 2024 WL 4941026, at *2 (S.D. Cal. Dec. 2, 2024) (noticing exhibit that provides "appropriate context for assessing [p]laintiff's allegations").

***Second***, Defendants assert that Plaintiffs seek notice "not merely for its existence, but for the truth of its contents." ECF 128 at 6. Not so. Plaintiffs' RJN expressly framed the letter as noticeable "for the fact that Senator Merkley performed (and is performing) an investigation into KinderCare." ECF 122 at 5. Thus, and to be clear, while the Merkley Letter asserts numerous findings that substantively overlap with the allegations here—an overlap that Defendants do not deny—Plaintiffs' references to the Merkley Letter as corroborating and strengthening the allegations go to the probative significance of the inquiry's existence, and ***not*** to the truth of Senator Merkley's findings. ECF 122 at 4-5; ECF 118 at 7; ECF 119 at 3, 32. This differs from the case cited by Defendants, *In re Turbodyne Technologies Securities Litigation*, 2000 WL 33961193, at *10 (C.D. Cal. Mar. 15, 2000), which addressed a plaintiff's attempt to inject new factual assertions concerning the defendant's trading volume through an opposition memorandum.

### 3. The Existence of the Congressional Inquiry Described in the Merkley Letter Is Powerful Evidence of Materiality

The fact of congressional inquiry by Senator Merkley, as revealed in the Merkley Letter, bears directly on the materiality question at the heart of Defendants' motions. An omitted or misstated fact is material where "there is a substantial likelihood that a reasonable shareholder would consider it important," viewed against the "'total mix' of information" available to

investors. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Here, a ranking member of the United States Senate found a company's "pattern of safety and compliance issues across multiple states" and "trends [that] raise questions about [] KinderCare's growth strategy" (ECF 120 at 67) significant enough to warrant a formal inquiry—and it stands to reason that a reasonable investor would, *a fortiori*, find that same information important. Indeed, courts recognize that outside scrutiny of a subject corroborates its materiality. *See In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 834 (N.D. Cal. 2014) (reasonable investor would find unreported safety incidents to "significantly alter the total mix of information"); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 941 (S.D. Cal. 2019) (analyst "coverage supports the materiality of the subject"). Analysts already deemed regulatory compliance a "key day-to-day operating risk[] for KinderCare" (AC ¶115); a congressional inquiry into the same subject confirms as much.

Thus, the investigation revealed by the Merkley Letter dismantles at least two of Defendants' recurring arguments against the materiality of the alleged misstatements and omissions. First, Defendants repeatedly contend that the safety and compliance representations in the Offering Documents are non-actionable "puffery" statements—but plainly safety and compliance practices that prompt a formal Senate investigation are not "so obviously unimportant" to a reasonable investor. *See In re Honest Co. Sec. Litig.*, 615 F. Supp. 3d 1149, 1154 (C.D. Cal. 2022); ECF 119 at 3, 32. Second, Defendants insist that the 1,982 violations in just the months preceding KinderCare's IPO—as uncovered by Lead Plaintiffs' investigation and alleged in the AC (*see* AC ¶13)—are not a pattern requiring disclosure but instead concern only trivial portions of its operations that no reasonable investor would notice. *See, e.g.*, ECF 127 at 1-2. To the contrary, the existence of the inquiry into KinderCare's "pattern of safety and compliance issues" since 2023—as revealed by the Merkley Letter (ECF 120 at 67)—indicates that Congress thinks

otherwise, refuting Defendants' arguments that the issues are immaterial as a matter of law at the pleading stage and corroborating the allegations that the Offering Documents omitted disclosures required by Regulation S-K. *See* ECF 119 at 30-32; *compare, e.g.*, *Sundaram v. Freshworks, Inc.*, 2023 WL 6390622, at *7 (N.D. Cal. Sept. 28, 2023) (Item 303 requires disclosure of a "business ***pattern***").

**4. Defendants' McDonald's Analogy Only Confirms Materiality**

The Merkley Letter also responds to the KinderCare Defendants' central rejoinder—their strained analogy between KinderCare and McDonald's Corporation, which they invoked in their motion, their RJN briefing, and their MTD Reply. Specifically, relying on McDonald's SEC filing (Defs' Exhibit 11), Defendants argue that large companies routinely disclose risks of "adverse commentary," litigation, and investigations, and thus KinderCare's disclosures challenged here are (they claim) unremarkable and inactionable. ECF 99 at 31-32; *see also* ECF 127 at 30. The Merkley Letter exposes the analogy as Defendants' effort to trivialize serious misconduct.

Defendants ask the Court to treat the misstatements and omissions in the Offering Documents of documented and systemic child-safety violations, license revocations, and staffing failures as equivalent to generic "adverse commentary" a fast-food chain might weather. But the two companies are not remotely comparable. McDonald's is a fast-food franchisor; KinderCare is a for-profit childcare provider entrusted with the daily care of more than 148,000 children. A regulatory lapse at McDonald's might involve a food-temperature log; a lapse at KinderCare might—and did, as alleged—involve leaving a child left unattended and hiring a sex offender, as just a few examples. AC ¶¶122, 206. Thus, Plaintiffs rightly described Defendants' premise that these companies are "similarly situated" as "bizarre" (ECF 121 at 7): investors evaluating a company responsible for the welfare of young children reasonably apply a fundamentally different risk calculus than investors evaluating a burger chain, and would not equate the two.

Worse, the analogy asks the Court to infer—at the pleading stage and in Defendants' favor—that a reasonable investor reading KinderCare's boilerplate disclosures would have understood that violations were already occurring and would have found any omission immaterial. But conduct that prompts a United States Senator to demand answers from a company and its private-equity owner is ***not*** the routine corporate occurrence reasonable investors expect, nor are the representations in the Offering Documents about such practices immaterial. Rather, they are precisely the sorts of misstatements and omissions that the Securities Act prohibit. At most, this raises a quintessential factual question that must be resolved in Plaintiffs' favor on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

### C. The Registration Rights and Stockholders Agreements Are Properly Incorporated by Reference

The Registration Rights and Stockholders Agreements (Exs. A and B, respectively) are properly considered part of the Registration Statement, which Defendants agree is incorporated by reference into Plaintiffs' complaint: in submitting the Registration Statement to the Court in their RJN, Defendants themselves admit that the Registration Statement is "central to this litigation . . . . [and a]s such, there can be no dispute that [it] is incorporated by reference." ECF 101 at 3. As Exhibits A and B are themselves incorporated by reference into the Registration Statement, they are accordingly also properly before the court. Plaintiffs' RJN at 4; *see also* 17 C.F.R. §230.411(c) ("Any document or part thereof filed with the Commission pursuant to any Act administered by the Commission may be incorporated by reference as an exhibit to any registration statement filed with the Commission."); ECF 100, Defs' Ex. 1 at 172 ("The following descriptions of . . . the Stockholders Agreement are summaries and are qualified by reference to . . . the Stockholders Agreement, which [is] filed as [an] exhibit[] to the registration statement of which this prospectus forms a part."). The Registration Statement itself alerts investors to the following:

> This prospectus, which constitutes a part of the registration statement, does not contain all of the information set forth in the registration statement, some items of which are contained in exhibits to the registration statement as permitted by the rules and regulations of the SEC. For further information with respect to us and shares of our common stock, we refer you to the registration statement and its exhibits. Statements contained in this prospectus concerning the contents of any contract or any other document are not necessarily complete. If a contract or document has been filed as an exhibit to the registration statement, please see the copy of the contract or document that has been filed. ***Each statement in this prospectus relating to a contract or document filed as an exhibit is qualified in all respects by the filed exhibit.*** The exhibits to the registration statement should be reviewed for the complete contents of these contracts and documents.

ECF 100, Defs' Ex. 1 at 199 (emphasis added). Incorporation by reference is thus appropriate.

At minimum, if the Court chooses to notice the Registration Statement, the Rule of Completeness requires consideration of the portions that Defendants omitted. *See* Plaintiffs' RJN at 3; Fed. R. Evid. 106. Moreover, Exhibits A and B constitute agreements between Partners Group and KinderCare that undergird the allegation that "Partners Group controlled KinderCare at the time of the IPO through Partner Group's . . . various transactions and agreements with KinderCare," and Plaintiffs appropriately rely on facts from both. AC ¶390; *Turbodyne Techs.*, 2000 WL 33961193, at *10 ("By incorporating the documents, plaintiffs have made the allegations their own, and they must thus be considered true for purposes of this motion to dismiss.").

The cases cited by Partners Group are inapposite, as those cases do not involve proper incorporation by reference. ECF 126 at 10-12. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (plaintiff's opposition asserted facts that did not exist in the complaint with no request for incorporation); *Abbot v. Experian Info. Sols., Inc.,* 179 F. Supp. 3d 940, 946 (N.D. Cal. 2016) (same); *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 347–48 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012) (unlike here, document at issue not referenced in the complaint); *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1043 (N.D. Cal. 2022) (unlike here, plaintiff did not seek to incorporate by reference).

Finally, Partners Group wrongly contends that the Court cannot consider Exhibits A and B because those exhibits purportedly bolster allegations not found in the complaint. ECF 126 at 10-11. In fact, the Amended Complaint provides sufficient notice of Plaintiffs' claims that Partners Group is liable under §15. *See* AC ¶390 ("Partners Group controlled KinderCare at the time of the IPO through . . . its appointment of KinderCare executives and members of the Board (including several of the Individual Defendants), its control over the Company through various transactions and agreements with KinderCare, and its historical relationship with the Company and its management."); *see also* AC ¶¶40-41, 43, 49-51, 394. Thus, these circumstances differ from the case cited by Partners Group, *Minor v. Fedex Office & Print Services, Inc.* (ECF 126 at 11), in which—unlike here—the plaintiff added factual allegations in support of an entirely new claim to which the defendant did not have notice. 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016).

## III. CONCLUSION

Because Defendants have failed to timely oppose Plaintiffs' Request for Judicial Notice and Incorporation by Reference and all Exhibits are properly before the Court, Plaintiffs respectfully request that the Court consider Jensen Decl. Exhibits A and B under the incorporation by reference doctrine and take judicial notice of Jensen Decl. Exhibit C. *See* ECF 120.

DATED: July 22, 2026

*/s/ Jesse L. Jensen*

**LABATON KELLER SUCHAROW LLP**
Lauren A. Ormsbee (admitted *pro hac vice*)
Jesse L. Jensen (admitted *pro hac vice*)
Alexandra E. Forgione (*pro hac vice* pending)
Jacqueline E. Lacovara (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: lormsbee@labaton.com
jjensen@labaton.com
aforgione@labaton.com
jlacovara@labaton.com

*Lead Counsel for Lead Plaintiff and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
TAEVA C. SHEFLER (admitted *pro hac vice*)
SNEHEE KHANDESHI (admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534

*Attorneys for Additional Named Plaintiff Venkata Surya Teja Gollapalli*

**STOLL BERNE LOKTING & SHLACHTER P.C.**
Timothy S. DeJong, OSB No. 940662
Keith A. Ketterling, OSB No. 913368
Cody Berne, OSB No. 142797
Chloe Jasper, OSB No. 253957
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email: tdejong@stollberne.com
kketterling@stollberne.com
cberne@stollberne.com
cjasper@stollberne.com

*Liaison Counsel for Lead Plaintiff and the Class*